UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ROBERTO BIRD HOFFMAN,**
Plaintiff

v.                                                    **CIVIL NO. 02-2561(DRD)**

**FERDINAND MERCADO, et als.,**
Defendants

## ORDER

The instant case is a Civil Rights action brought forth by Roberto Bird Hoffman ("plaintiff") pursuant to 42 U.S.C. § 1983, and P.R. Laws Ann. § 5141.  In sum, plaintiff is seeking several remedies, to wit: (1) compensatory damages, (2) punitive damages, (3) costs, interests, and attorney's fees.  At the time of the filing of the complaint, plaintiff was the Registrar of the Copyright Registry of Puerto Rico.  He later resigned the position in August 2003.  Plaintiff brought the instant suit against Ferdinand Mercado (then Secretary of the Department of State of Puerto Rico), his wife, their Conjugal Partnership; Anabelle Rodriguez (then Secretary of the Department of Justice), her husband, and their Conjugal Partnership; Sila Maria Calderon (then Governor of Puerto Rico), her husband, and their Conjugal Partnership; and Cesar R. Miranda (then Chief of Staff to the Governor of Puerto Rico), his wife, and their Conjugal Partnership for having violated his First, and Fourth Amendment rights, and having deliberately defamed him through the local press due to his political affiliation. *See Third Amended Complaint*, Docket No. 59 at 12-14.  Now, pending before the Court is *Defendants' Motion for Summary Judgment*.  (Docket Nos. 65, 66, 67, and 72).  Said motion was duly opposed by plaintiff.  (Docket Nos. 89, and 93).

## I.  SUMMARY JUDGMENT STANDARD

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment

Page 1 of  29

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©.  *See* Celotex Corp v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," *and* that he is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).  When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the  resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact.  *See* Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir. 2001); Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, at187; McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (the Court must look behind the facade of the pleadings alleged in the complaint, in this case the *Third Amended Complaint* (Docket No. 59) and examine the parties proof in order to determine whether a trial is required.).  Furthermore, a fact is "material" if it potentially could affect the suit's outcome.  *See* Id.  An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor.  *See* Id.  The

Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000).

This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *See* Reeves, id. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood[.]" Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). "The Court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." Id. An absence of evidence on a critical issue weighs against the party –be it the movant or the non-movant– who would bear the burden of proof on that issue at trial. *See* Perez v. Volvo Corporation, 247 F. 3d at 310; *see also* Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). Accordingly, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." Ayale-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (*citations omitted*).

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Company v. Hayes, 116

F.3d 957 at 959-60 (1st Cir. 1997).  In other words, the court must construe the record and all reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). *See* Suarez v. Pueblo Int'l, Inc. 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; *see also* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate**, shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis added).  The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the party; therefore, a District Court is nonetheless "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate."  Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991); *see also* Lopez v. Corporacion Azucarera de Puerto Rico, 938 f.2d 1510, 1517 (1st Cir. 1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law).  In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition."  Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 451-52 (1st Cir. 1991) (discussing unopposed motion for summary judgment).  Notwithstanding, **a party that fails to oppose a motion for summary judgment, does so at its own risk and peril**.  *See e.g.* Corrada Betances v. Sea-Land Services, Inc., 248 F.3d 40, 43 (1st Cir. 2001); Herbert v. Wicklund, 744 F.2d 218, 233 (1st Cir. 1994).  However, even though that there is no opposition on file to a summary judgement, the Court must entertain the motion on the merits and may not grant the same as a sanction to the party who fails to oppose. *See* De la Vega v. San Juan Star, 377 F. 3d 111(1st Cir., 2004).

## II.  FACTUAL & PROCEDURAL  BACKGROUND

The Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment.  *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000) ("...the Court must draw all reasonable inferences in favor of the nonmoving party..."); *see also*, Leahy v. Raytheon Company, 315 F.3d 11, 17 (2002) ("...the court must take the record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor'.") (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990); *see also*, Plumley v. Southern Container Inc., 303 F.3d 364, 368-69 (1st Cir. 2002)).

Before becoming Registrar of the Copyright Registry of Puerto Rico, plaintiff labored as the Deputy Secretary of Commerce under the administration of ex-governor Luis A. Ferre.  He then was the Director of the Municipality of San Juan's Legal Department under the ex-mayor (and later, ex-governor) Carlos Romero Barcelo.  Both, Mr. Ferre, and Mr. Barcelo held office under the NPP party.  Subsequently, between 1976 and 1991, plaintiff served as Superior Court Judge.  All in all, plaintiff has been serving the government for over thirty (30) years.  However, he did not work solely under NPP administrations.  Plaintiff was also employed for about two (2) years by former PDP governor Rafael Hernandez Colon to provide legal services under various contracts with the Right to Work Administration.

Plaintiff was appointed Registrar of the Copyright Registry of Puerto Rico on July 1st, 1993 under NPP former governor Dr. Pedro Rossello.  As Registrar, plaintiff enjoys employment benefits analogous to those of a Superior Court Judge from the Commonwealth of Puerto Rico.  Such public servant's hierarchy, salary, and term are the same.  The Registrar is appointed by the Governor for

a term of twelve (12) years, but only with the consent and approval of the Senate of Puerto Rico. The Copyright Registry is attached to the Department of State. Albeit, regardless of said attachment, the Registrar is empowered to acquire services and equipment, and to adopt all rules pertaining to the registration, deposit, reproduction, and fees for all intellectual property presented for inscription. Furthermore, the registrar has full authority to adopt all rules regarding the acquisition and control of the equipment obtained for the Copyright Registry and the accounting of funds. 31 P.R. Laws Ann. §§ 1402b *et seq.* However, the Registrar of the Copyright Registry never took any steps to create his own budget so as to financially separate his office from the Department of State because "that would have entailed that [the Registry ...] create [ ] an Accounting Office inside the Registry [ ] and [the Registry] did not have the personnel to do it." Plaintiff's Counter Statement of Material Facts ("PCSMF"), Exhibit 6. Consequently, the Registry's budget was under the jurisdiction of the Finance and Budget Office of the Department of State. Id., Exhibit 2. Thus, registration fees collected would then be placed in the general fund of the Department of Sate to be used if the Registry had a need for equipment. Notwithstanding, if the Registry was in need of materials, said request would have to go through the process of requisition and it had to be approved by the Budget Office of the Department of State. Id., Exhibit 6.

The general elections of November 2000 resulted in the PDP taking office in January 2001. Accordingly, co-defendant, and then governor, Calderon appointed co-defendant Ferdinand Mercado as Secretary of the Department of State. On February 27, 2001, only about a month and a half into his incumbence, co-defendant Mercado issued a letter wherein co-defendant Mercado referred to the Department of Justice, particularly to co-defendant Anabelle Rodriguez, then Secretary of Justice, "the possible illegal use by the Copyright Registry of the Internet System." *See* Defendants'

Statement of Uncontested Facts ("DSUF"), Exhibit 2.  Said letter also indicated that co-defendant Mercado had received information from systems personnel explaining that the computers assigned to said registry had been utilized to access pornographic material, and that the access password that reflected this activity corresponded to the Registrar of the Copyright Registry.  Co-defendant Mercado emphasized to Rodriguez that, pursuant to Administrative Order 99-003, as issued by then NPP appointed Secretary of State Norma Burgos, unauthorized usage of the computers and Internet services constituted the unofficial usage of the Internet for entertainment or for personal benefit, as well as access to unofficial material, immoral, offensive, or pornographic. Id. Finally co-defendant Mercado expressed his concern regarding possible violations to state and/or federal statutes concerning the traffic of pornographic material.  Plaintiff  then proceeded to offer his services to "provide additional information that, due to the nature of this communication, I have not included." Id.  Furthermore, also during the beginning months of 2001, plaintiff's personal secretary, Nancy Zayas, was transferred out of his office.  His request for a replacement went unattended.  Plaintiff's parking space, space which he had been utilizing since he was first appointed, was taken away from him.    Notwithstanding, after plaintiff complained to the Equal Employment Opportunity Commission, and the EEOC notifying co-defendant Mercado that said action would potentially constitute a violation under the Americans with Disabilities Act, Mercado ordered the parking space be reinstated to plaintiff.  PCSMF, Exhibit 2.  The Court notes, however, that there is no record whatsoever of plaintiff having requested a parking space for any reason within the Department of State.  DSUF, Exhibit 5.

The Department of Justice inquired into the computer use matter regarding Mercado's letter concerning immoral material found in the Copyright Registry computers and, on September 12,

2001, co-defendant Rodriguez replied to Mercado's letter.  Through said letter, then Secretary of Justice Rodriguez informed Mercado that the Department had corroborated, through its independent investigation, that the computer situated in the Registrar's office, while utilizing the password assigned to the Registrar – both belonging to plaintiff Bird – had accessed, through the Internet, pages exhibiting material of pornographic, and child pornographic, content.[1]  DSUF, Exhibit 3. However, Rodriguez explained that, pursuant to the Governmental Code of Ethics, 3 P.R. Laws Ann. § 1801, *et seq.*, said findings were not sufficient at law to prove, beyond a reasonable doubt, the elements required under Article 3.2(c) related to the use of public property to obtain advantages, privileges, or benefits not allowed by law.  Notwithstanding, provided that Articles 6 and 5 of the Rules of Governmental Ethics, Rule No. 4827 of November 23, 1992, were potentially applicable to this situation, Rodriguez informed that she was referring this issue to the Office of Governmental Ethics.  Id.  Pursuant to the letter signed by Vilmary Soler Suarez, Assistant District Attorney, and Felix Fumero Pugliessi, Director of the Public Integrity Office, on September 19, 2001, it was recommended that the complaint of illegal use of the Internet (the alleged pornographic materials accessed) against plaintiff be dismissed. DSUF, Exhibit 11. Notwithstanding this recommendation, on October 22, 2001, a news article was reported in El Nuevo Dia wherein plaintiff was named as being under investigation by the Government Ethics Office and the Department of Justice for allegedly having accessed pornographic materials through the Internet.

Plaintiff Bird, understanding that he had been discriminated against because of his political affiliation by allegedly having been stripped of responsibilities that were previously legitimately his, of his supervisory status and his right to work independently on projects of significance, and having

---

[1]  A Report of Findings was filed by Agent Michael Galarza dated July 3, 2001 reflecting the multiple pornographic websites that had been visited.  DSUF, Exhibit 14.

had to endure a sustained and significant general worsening of employment conditions, filed the present claim on October 18, 2002 in an effort to vindicate his rights under de First and Fourth Amendments of the Constitution of the United States.  As explained above, he also seeks relief under alleged defamation pursuant to the common law of the Commonwealth of Puerto Rico based on the newspaper publications.  Plaintiff later amended (on three different occasions) the complaint to add other defendants and a claim for constructive discharge.  (Docket No. 59)

Only three and a half months after plaintiff filed his suit, he delivered a letter to co-defendant, then governor, Calderon on January 31, 2003.  Through said letter, plaintiff advised Calderon as to the position of the Registrar of the Copyright Registry, summarized his previous work experience, and requested her position as to the possibility of him leaving his position as Registrar before his term expired.  He explained the reason behind his consideration of retirement was the fact that his functions had been obstructed by the political persecution, and discriminatory work environment created by co-defendant Mercado against him and his personnel.  This, in turn, had negatively affected his health, as well as that of his employees.  *See Letter*, Docket No. 32, Exhibit 1.  The described letter was never answered, and, ultimately, on or about July 15, 2003, plaintiff tendered his formal resignation to co-defendant Calderon, effective August 31, 2005. DSUF at 3, #10, and accepted by plaintiff in PSCMF at 2, #10.

### III.  § 1983 CLAIMS

To succeed on a claim under 42 U.S.C. § 1983, plaintiff must establish, first, that the rights, privileges and immunities granted to him by the Constitution or the laws of the United States were

violated; and second, that the violation was committed by a person acting under color of state law.[2]

*See e.g.* Daniels v. Williams, 474 U.S. 327, 196 S.Ct. 662 (1986). The Court examines first plaintiff's First Amendment arguments brought under § 1983.

### A. First Amendment Claims

Plaintiff insists that his rights were violated when the Defendants discriminated against him when Mercado, under color of state law, orchestrated and set in motion a chain of separate and distinct actions intended to harm and humiliate him on the sole basis of his political affiliation. Bird further complains that the actions taken against him have been severe and adverse enough to place him in a situation unreasonably inferior to the norm of his position amounting to a constructive discharge.

Before analyzing these claims, it is important to emphasize that the tests and legal standards in the First Amendment context are "notoriously fuzzy," essentially "because the cases deal under the same head with very different problems and 'justifications.'" Flynn v. City of Boston, 140 F.3d 42, 46 (1st Cir. 1998). Therefore, it is of vital importance to parse out the cognizable First Amendment issues present in the instant case:

> The Supreme Court has developed two lines of cases to address the First Amendment rights of public employees. One line of cases involves the extent to which the government can take adverse action against an employee because of her political affiliation. The second line involves government employees who claim to be victims of retaliation taken against them as reprisals for their having spoken out on matters

---

[2] 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . . .

of public concern.

Mendoza Toro v. Gil, 110 F.Supp.2d 28, 34 (D.P.R. 2000) (citations omitted).  Currently before the

Court are claims only under the first category mentioned – political discrimination.  Accordingly,

the Court will proceed to analysis of plaintiff's political discrimination claim.

### 1) "Political Discrimination" Claim

I)      Generally:

It has consistently been held that the First Amendment protects **non-policymaking** public

employees form adverse employment actions based on their political affiliation.  *See* Rutan v.

Republican Party of Ill., 497 U.S. 62, 75-76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1993); Mercado

Alicea v. P.R. Tourism Company, 396 F.3d 46, 51 (1st Cir. 2005); Padilla Garcia v. Rodriguez, 212

f.3d 69, 74 (1st Cir. 2000).  It is settled law that when a plaintiff institutes a claim of political

discrimination, he or she, undoubtedly, bears the burden of producing sufficient evidence, be it

through direct or circumstantial means, that he or she engaged in a constitutionally protected

conduct and that his or her political affiliation was the **substantial or motivating factor** behind the

challenged adverse employment action.  *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274,

287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Guzman Ruiz v. Hernandez Colon, 406 F.3 31, 34 (1st

Cir. 2005); Gonzalez de Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir. 2004); Cosme

Rosado v. Serrano Rodriguez, 360 F.3d 42, 47 (1st Cir. 2004).  Accordingly, said plaintiff is

obligated to point "to evidence on the record which, if credited, could permit a rational fact finder

to conclude that the challenged personnel action occurred and stemmed form a politically based

discriminatory animus."  LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996) (*quoting* Rivera Cotto

v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994)); *see also*, Cruz Baez v. Negron Irizarry, 360 F.Supp.2d

326 (D.P.R. 2005).  Furthermore, even though circumstantial evidence may be sufficient to support a finding of political discrimination, a plaintiff must make a fact specific showing that a causal connection exists between the adverse employment action and their political affiliation.  *See* Aviles Martinez v. Monroig, 963 F.3d 2, 5 (1st Cir. 1992).

However, the First Circuit has established that knowledge of political affiliation cannot be merely established through testimony of having been seen, or, for that matter, met during routine campaign activity participation, having been visited by the now incumbent defendant while said defendant was a candidate to the position he now holds, by having held a trust position in the outgoing administration, by having political propaganda adhered to plaintiff's car and/or house, or through the knowledge of third parties.  *See* Gonzalez Pina v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005); Gonzalez de Blasini, *supra* at 85-86 (affirming the dismissal of a complaint concluding that, even though plaintiff was alleged to be a well known supporter of the NPP, had held a trust position under the previous NPP administration, and defendant had expressed interest in giving her position to a PDP member, this fell short of evidence that defendant knew of plaintiff's political affiliation); Vazquez Valentin, *supra*; Cosme Rosado v. Serrano Rodriguez, *supra* at 48; Camilo Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999) (holding that evidence must be presented that defendant was either the primary actor involved in, or a prime mover behind, the underlying violation); Acevedo Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993) (holding the fact that plaintiffs were conspicuous targets for discriminatory employment action by defendants because they played prominent roles in publicly and vocally supporting a former mayor was not enough).  Thus, asserting inequity and tacking on a self-serving conclusion that defendant was motivated by discriminatory *animus* does not suffice as the *prima facie*-fact specific showing that a plaintiff was a victim of

political discrimination.  Id.

Finally, if a plaintiff succeeds in making a *prima facie*-fact specific showing of political discrimination, judgment as a matter of law cannot be entered against said plaintiff for defendant is allowed to prove, by preponderance of the evidence, that the adverse employment action would have been made regardless of the employee's political affiliation.  Id.  This particular defense commonly referred to as the *Mt. Healthy* defense requires, thus, that defendant show, by a preponderance of the evidence, that the adverse employment decision would have been made regardless of the employee's political beliefs.  Defendants must also establish that they would have taken said corrective action against all employees in similar position to plaintiffs' – or otherwise show that they would have taken the corrective action either way – regardless of political affiliation.  *See* Sanchez Lopez v. Fuentes Pujols, 375 F.3d 121, 131 (1st Cir. 2004).  If said evidence is credible and nondiscriminatory, the burden is shifted, once again, to plaintiff where he or she must make a showing that political affiliation "was more likely than not a motivating factor."  Padilla Garcia v. Rodriguez, 212 F.3d 69, 74 (1st. Cir. 2000).  Logically, then, a plaintiff may still prevail if it is found he or she would not have received the same treatment 'but for' his or her political affiliation.  *See* Acosta Sepulveda v. Hernandez Purcell, 889 F.2d 9, 13 (1st Cir. 1989).

Notwithstanding all of the above, the Court, for purposes of this case, shall accept that defendants knew the political affiliation of plaintiff Bird Hoffman because of the appointments made to him as director of the legal department of the Municipality of San Juan and Deputy Secretary of Commerce under NPP administrations.

ii)      "Short of Dismissal"/Constructive Discharge:

Plaintiff claims that he was discriminated against, placed in a position unreasonably inferior

to the norm, and eventually constructively discharged from his position as Registrar of the Copyright Registry because of his affiliation with the NPP. He argues that this discrimination and the adverse employment actions taken against him deprived him of fundamental First Amendment rights. *See* Rutan v. Republican Party of Ill., 497 U.S. 62, 110 S.Ct. 2729 (1990); Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287 (1980); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673 (1976).

Indeed, the First Amendment protects government employees from short of dismissal treatment in the workplace. In essence, in "short of dismissal" causes of actions, as is one of the allegations brought forth by plaintiff, a plaintiff has to show, through preponderance of the evidence, that the diminution in his or her duties was motivated by discrimination based on political affiliation; and, by clear and convincing evidence, that the challenged actions resulted in a work environment "unreasonably inferior" to the norm for the position. *See* Gonzalez Pina v. Rodriguez, 407 F.3d at 431-32; Ortiz Garcia v. Toledo Fernandez, 405 F.3d 21 (1st Cir. 2005); Acosta Orozco v. Rodriguez de Rivera, 132 F.3d 97 (1st Cir. 1997); Agosto v. Agosto de Feliciano, 889 F.2d 1209, 1218-20 (1st Cir. 1989); Agosto v. Aponte Roque, 800 F.Supp. 1033, 1037 (D.P.R. 1992). Furthermore, in guiding district courts as to the application of the "unreasonably inferior" prong of the *prima facie* analysis, the First Circuit Court has explained that this determination rests upon whether "the government's actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party." Agosto de Feliciano, 889 F.2d at 1217. Again, if this two-pronged showing is met, then judgment as a matter of law is inapposite for defendant would have the right to contest plaintiffs' *prima facie* claim of "short of dismissal" due to political discrimination by demonstrating that the adverse employment action would have been made regardless of the employee's political affiliation or by showing that the

"short of dismissal" threshold of "reasonably inferior position" to a "hardy individual to compromise their political beliefs" had not been met.

Albeit, the First Circuit has translucently upheld that an employee who has lost merely the perks of his position; whose job has been substantially narrowed, but retains supervisory authority over matters of comparable significance to those taken away; who had been a supervisor and had worked independently and lost said independence, or *vice versa*; and who is given one or two short-term assignments that are below his rank **do not** meet the unreasonably inferior standard. On the contrary, he who was left with only a few routine and technical assignments, or no significant assignments at all; whose job functions remain largely the same, but is excluded from policymaking sessions; who retains her job duties, but is criticized harshly and on a nearly daily basis and never provided with guidance on how to improve, and/or transferred to an undesirable office space **do meet** the threshold of unreasonably inferior standard. *See* Gonzalez Pina v. Rodriguez, 407 F.3d at 431-32; Ortiz Garcia v. Toledo Fernandez, 405 F.3d 21 (1st Cir. 2005); Acosta Orozco v. Rodriguez de Rivera, 132 F.3d 97 (1st Cir. 1997); Agosto v. Agosto de Feliciano, 889 F.2d 1209, 1218-20 (1st Cir. 1989); Agosto v. Aponte Roque, 800 F.Supp. 1033, 1037 (D.P.R. 1992).

Similarly, in order for a plaintiff to prove that he or she suffered short of termination or was constructively discharged, a plaintiff must show that the new working conditions **imposed by the employer** had become so onerous, abusive, and/or unpleasant that a reasonable person in the employee's position would have felt compelled to resign. *See* Mercado Alicea, 396 F.3d at 52; Suarez v. Pueblo Intern., Inc., 229 F.3d 49, 54 (1st Cir. 2000); Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993) (holding that constructive discharge occurs when "working conditions [are] so intolerable[ ] that a reasonable person would feel compelled to forsake his job rather than to

submit to looming indignities"); Aviles Martinez v. Monroig, 963 F.3d 2, 6 (1st Cir. 1992). Although resignation is ordinarily not a discriminatory act, when a resignation constitutes a constructive discharge, it is considered a discriminatory act. *See* Gonzalez Garcia v. P.R. Elec. Power Auth., 214 F.Supp.2d 194, 204 (D.P.R. 2002). "Alleging constructive discharge presents a 'special wrinkle' that amounts to an additional prima facie element." Sanchez v. Puerto Rico Oil, Co., 37 F.3d 712, 719 (1st Cir. 1994). Accordingly, plaintiff must establish a *prima facie* case that he or she (1) was within a protected class; (2) met the **employer's** legitimate performance expectations; (3) was actually or constructively discharged; and (4) was replaced by another with similar skills and qualifications. *See* St. Mary's Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also* Landrau Romero v. Banco Popular de P.R., 212 F.3d 607, 613 (1st Cir. 2000).

However, "[i]f a plaintiff does not resign within a reasonable time period after the alleged harassment, he was not constructively discharged." Gonzalez Garcia, 214 F.Supp.2d at 204 (*quoting and following* Landrau Romero, 212 F.3d at 613 (holding that **seven month** gap between the alleged employment discrimination and plaintiff's resignation was too long a period to find that plaintiff had been constructively discharged)); *see also* Smith v. Bath Iron Works Corp., 943 F.2d 164, 167 (1st Cir. 1991) (holding that no constructive discharge occurred where plaintiff quit **six months** after the last reported incident of discrimination).

    iii)    <u>Analysis</u>:

First and foremost, the Court must undoubtedly conclude that plaintiff does not have a First Amendment right to political affiliation claim actionable under 42 U.S.C. § 1983. From a clear reading of the above cited case law, there is no question that Section 1983 was instilled to provide

a vehicle for **non-policymaking** public employees to demand respect for their rights against their **employers**.  There is also no doubt that, from a comprehensive reading of the Copyright Registry Statute, and its legislative history, notwithstanding the fact that the Registry is ascribed to the Department of State for financial reasons, there is absolutely nothing in that statutory body that moves the Court to even so much as assume that the Registrar, or the Registry for that matter, is a subordinate to either the Secretary of State, the Secretary of Justice, or the Governor of Puerto Rico. On the contrary, as explained above, the statute categorically delineates the Registrar's position as one of equal standing to that of a Judge of the Court of First Instance of Puerto Rico – an independent position that does not respond to any of the defendants herein – and as one that provides the Registrar with the full authority to create and implement rules, regulations, and policies regarding the registry of intellectual property materials in Puerto Rico, unquestionably a quasi-legislative and quasi-judicial position.[3]  *See* 31 P.R. Laws Ann. §§ 1402(b), 1402(g), 1402(*l*). Finally, even, *in arguendo*, if the Court were to accept as true without any proof whatsoever that the Registrar is, in fact, subordinate to the defendants herein, his claims would still fail to reach the required threshold.   Citing to case law, plaintiff briefs the Court anent the relevant political discrimination standards, but he fails to oppose adequately Defendants' arguments with more than general, unsupported assertions and conclusory allegations.  Indeed, in his memorandum, he only juxtaposes his political affiliation to that of the defendants.   He further attempts to contest

---

[3]  From a reading of the *Joint Memorandum* filed by the Civil Judicial Commission and the Commission of Culture and Education with the Puerto Rico House of Representatives recommending the approval of the law creating the Copyright Registry, it is crystal clear that the Registrar's position is that of a quasi-legislative and quasi-judicial nature.  "The Legislative Branch and the Government of Puerto Rico must promote that the intellectual community of this country enjoys the greatest protection of its rights.  Thus, to create a Copyright Registry that allows the most adequate defense of this class's rights facilitating the registry and protection of all the rights inherent to the members of this class is unpostponable."  *Joint Memorandum* of February 26, 1987 at 7 (translation ours). The same reasoning is reflected in the *Exposition of Motives* that preludes said statute.

defendants' request for summary judgment by alleging unreasonably inferior working conditions because his requisitions for materials and requests for employee reclassification went unattended by co-defendant Mercado, that his secretary was transferred and never replaced, his parking space taken away, was stripped of his responsibilities, and his authority over the Registry undermined.

But, notwithstanding that his secretary, Ms. Doris Soto, retired at her own request, he remained with his regular other staff allowing him to comply with his duties.  Further his parking rights, assuming that he originally possessed said rights, were reinstated.  Moreover, in not a single one of the Exhibits brought forth by plaintiff does he show what requisitions were made and unattended, how he was stripped of his responsibilities by someone who, pursuant to the Copyright Registry Act, does not have the authority to do so, or how his authority over the Registry was undermined.  More telling still is the fact that he waited years since the alleged discriminatory acts to resign his position.  Furthermore, plaintiff's assertion that he was left without a secretary is a toothless tiger when juxtaposed to the fact that plaintiff still had two assistants working under him in the Registry – Mr. David Maysonet Castro, and Ms. Alicia Rivera Gonzalez.  *See* PSCMF, Docket No. 93, Exhibits 3, and 4.  Plaintiff Bird fails to present any evidence which surpasses mere political affiliation.  Also, the facts he outlines throughout his memorandum and the evidence proffered, without additional, hard, documented evidence of discrimination, merely constitute a strained attempt to connect the alleged political affiliation of his co-workers with the fact that he feels he was treated unfairly.  Facing *brevis* disposition, the plaintiff is required to show more than "speculation and surmise even coupled with effervescent optimism."  Ayala Gerena v. Brystol Myers-Squibb, Co., 95 F.3d at 95, more was required from him.  **More so when he, himself, explained in his deposition how support had been lacking for the Registry since its origination even under the**

**control of the NPP.**  Furthermore, the First Circuit has consistently held that an employee who has lost merely the perks of his position **does not** meet the threshold of unreasonably inferior standard. *See* Gonzalez Pina v. Rodriguez, 407 F.3d at 431-32; Ortiz Garcia v. Toledo Fernandez, 405 F.3d 21 (1st Cir. 2005); Acosta Orozco v. Rodriguez de Rivera, 132 F.3d 97 (1st Cir. 1997); Agosto v. Agosto de Feliciano, 889 F.2d 1209, 1218-20 (1st Cir. 1989); Agosto v. Aponte Roque, 800 F.Supp. 1033, 1037 (D.P.R. 1992).

It is axiomatic that the plaintiff has an affirmative responsibility to put his best foot forward by presenting evidence that will support his claim, but has failed.  *See* McCoy v. Massachusetts Institute of Technology, 950 F.2d 13, 22 (1st Cir. 1991).  Plaintiff has only proffered self serving averments in a vacuum surrounded by unsupporting depositions and letters.  Plaintiff has not complied with his affirmative responsibility, and "[he] cannot expect a trial court to do his homework for him."  Id. at 23.

Plaintiff Bird's failure to bear the initial burden of demonstrating a political *animus*, compels the Court to grant defendants' motion for summary judgment in that plaintiff Bird has failed to properly respond to *brevis* disposition of summary judgment challenge.  In light of these circumstances, the Court deems that plaintiff has failed to make out a *prima facie* case of First Amendment political discrimination, and the Court **GRANTS** summary judgment as to the claim of "short of termination" and of "constructive discharge" allegations.

Furthermore, the Court deems pertinent a clarification involving a critical issue.  Pursuant to historically established Supreme Court case law, the President's absolute power of removal has been confined by federal courts to the removal of **purely executive officers**.  *See* Humphrey's Ex'r v. United States, 295 U.S. 602, 624-28, 55 S.Ct. 869 (1935), 79 L.Ed. 1611; Santana v. Calderon,

342 F.3d 18, 27 (1st Cir. 2003). Accordingly, it is Congress who may limit the removal power – and this Court harbors serious doubts that said removal may be effectuated through constructive discharge – of the President with respect to officers performing quasi judicial or quasi-legislative functions. Id. As the Supreme Court concluded in Wiener v. United States, 357 U.S. 349, 354, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958) the War Claims Commission "was established as an adjudicating body with all the paraphernalia by which legal claims are put to the test of proof," the Court makes such a finding herein regarding the Copyright Registry. Consequently,

> [j]udging the matter in all the nakedness in which it is presented, namely, the claim that the [Governor] could remove a [Registrar] of an adjudicatory body like the [Copyright Registry] merely because he wanted his own appointees on such a [position], [the Court is] compelled to conclude that no such power is given to the President [Governor] directly bye the Constitution, and none is impliedly conferred upon him by statute simply because Congress said nothing about it. The philosophy of *Humphrey's Executor*, in its explicit language as well as its implications, precludes such a claim.

Id.

Subsequently, the Court noted that in order to absolutely determine if the officer occupies a purely executive position, it must be evaluated whether the removal restriction are of such a nature that they impede the President's ability to perform his constitutional duty, and the functions of the official in question must be analyzed in that light. *See* Morrison v. Olson, 487 U.S. 654, 689-90, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988); Santana, 342 F.3d at 27. In other words, once *Morrison* was decided, the removal powers of the President [Governor] were clearly limited to purely executive officers if the removal implicates the President's [Governor's] power to perform his constitutional duty to assure that the laws are faithfully executed. Id. *A priori*, it follows, thus, that plaintiff, the Registrar of the Copyright Registry of Puerto Rico, is **not** an executive position in that plaintiff's position does not entail merely classic policymaking or administrative authority **such that**

**the Governor's obligation to execute the laws would be hindered by her inability to control the occupant of the position of Registrar to the Copyright Registry.**  That said, the Court understands and concludes that the only manner in which plaintiff may be removed from his position is through legislative impeachment seeing that the statute does not provide for a procedure of removal over plaintiff's position which, unquestionably, has **quasi-judicial functions,**[4] and is, by law, a position with a fixed term of office equal to that of a Judge of the Court of First Instance – twelve years, 31 P.R. Laws Ann. § 1402a.  Finally, seeing that the Act does not provide for a procedure of removal, the Court is left with no choice, but to turn to the Puerto Rico's *Political Code*, 3 P.R. Laws Ann § 1 *et seq.* in order to determine how the Registrar, a public official with quasi-legislative and quasi-judicial faculties, may be removed from his position, of course, in light of *Humphrey's Ex'r*.

Pursuant to article 167 of the Political Code, a public official is "[e]very officer, the mode of whose appointment is not prescribed by the Constitution of the Commonwealth, or the laws of Puerto Rico, shall be appointed by the Governor by and with the advice an consent of the Senate." 3 P.R. Laws Ann. § 541.  Accordingly, plaintiff herein is, unquestionably, a public officer due to the Copyright Act specifically providing that the Registrar shall be appointed by the Governor with the advice and consent of the Senate.  By the same token, once appointed as public officer, each and

---

[4]  The Court harbors no doubt as to the Copyright Registrar's capacities as both a quasi-legislative and a quasi-judicial appointment.  Section 1402f specifies that "[t]he Copyright Registrar will provide, through regulations, the way the works shall be registered and deposited" – clearly a quasi-legislative faculty.  Furthermore, Section 1402g awards the Registrar unquestionable quasi-judicial functions.  The Act goes as far as providing petitioners to the registry to appeal to a higher judicial court the review the Registrar's findings.  "In the event that the Copyright Registrar decides that a registration cannot be made pursuant to sections 1404-1402m of this title or the regulations approved thereunder, the registration request will be denied and said denial will be notified to the petitioner within the following fifteen (15) days.  The party interested in the registration shall have thirty (30) days to go before the Superior Court and request a review of the Registrar's decision.  The Registrar will notify the reasons for the denial and will advise the petitioner that he/she shall have thirty (30) days following the notification to appeal to the Superior Court of Puerto Rico through the corresponding review process."  Moreover, Section 1402i provides and delineates the Registrar's sanctioning faculty.  "The first violation of the provisions of section 1402h of this title shall be punished with a fine imposed by the Office of the Registrar upon holding an Administrative Hearing and which shall not exceed five hundred dollars ($500.00).  Said fine may be doubled in case of recurrence."

every person occupying said position, be it within the executive, administrative, legislative or judicial spheres, said officer must take the *Oath of Office and Official Bonds*.  3 P.R. Laws Ann. § 601.  Failure to comply or violation of this oath, in turn, results sufficient just cause to **remove** an officer from his position.  3 P.R. Laws Ann. § 6.  Consequently, the nominating authority has the full faculty to remove any officer that it had appointed with the express exception of those whose removal is proscribed in another fashion by the Constitution.  Id.  "In this manner, it is statutorily recognized that the Governor's nominating power implies the power to remove." Calderon v. Garcia Garcia, KLRA 2002-00267, 2002 P.R. App. LEXIS 1970, *18-19 (P.R. Cir. Jun. 28, 2002).

Upon close examination of all the norms statutorily provided and further explained by case law, and, upon application to the case at bar, the Court concludes that the Copyright Registry Registrar is, in fact, a quasi-judicial public official having the Governor named him with the advice and consent of the Senate for a fixed term of twelve years (the Legislature making a finding that he is equal in standing to a Superior Court Judge as to his term in office).  By virtue of this critical fact, he is, thus, subject to the **removal** faculty inherent to the nominating authority (the Political Code is not, to this Court's understanding, open to said removal taking effect through constructive discharge).  Notwithstanding, as explained above, provided that the Registrar does not occupy a "purely executive", policymaking position, particularly his quasi-judicial functions, the nominating authority's removal power is subjected to the limits set forth by the Senate, and, in the absence of particular disposition by the Senate to the effect – as is the case herein – the nominating authority must abide by that established in *Huphrey's Ex'r* (person with a quasi-judicial function may not be removed except by filing of charges and subject to senatorial findings of just cause).  Therefore, if the nominating authority wished to remove the Registrar, it may only do so for just cause related to

the performance of his functions. Otherwise, the nominating authority is prohibited from said removal – more so when plaintiff's position does not entail purely policymaking or administrative authority such that the Governor's obligation to execute the laws would be hindered by her inability to control the occupant of the position of Registrar to the Copyright Registry.

The fact that plaintiff can be removed because of his quasi-judicial functions only with the consent of the senate succinctly means that the allegations of constructive discharge allegedly carried on by co-defendants are severely undermined and virtually non-existent further strengthening the reasoning set forth above as to the lack of elements for a constructive discharge to materialize.

## B.  Fourth Amendment Claim

Plaintiff purports to request relief against defendants for violations to his right to be free form malicious prosecution and unreasonable searches and seizures – violations which, he contends, are actionable under 42 U.S.C. § 1983.  In essence, he argues that the defendants sought the commencement of criminal proceedings against him, at the behest of co-defendant Mercado after conspiring with co-defendant Rodriguez, without probable cause and with actual malice to deprive him of his federally protected Fourth Amendment rights.  Plaintiff sustains that co-defendant Rodriguez ordered a search an seizure of Bird's office to further politically harass him and to force him to relinquish the Registrar position.  The seizing officers removed his computer from his office, only after having acquired a Court Order to act.  However, plaintiff alleges that said order did not identify any criminal material to be seized, no search protocol was involved, the request for information was not tailored as to time, place, or subject matter – all constituting, according to plaintiff, an impermissible fishing expedition.  Notwithstanding, plaintiff himself, **states** that there was no sufficient evidence to pursue charges, thus, criminal charges were **never** filed.  Defendants

sustain that the plaintiff has failed to state a malicious prosecution claim pursuant to the Fourth Amendment.  Hence, defendants purport that, since there is no constitutional violation, plaintiff has failed to state a claim pursuant to §1983.

Pursuant to 28 U.S.C. § 1331, the federal courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Moreover, section 1983's purpose "[i]s to provide a remedy in federal court in protection of federal rights."  Ramos Bonilla v. Vivoni del Valle, 336 F.Supp.2d 159,166 (1st Cir. 2004) (quoting Birnbaum v. Trusell, 371 F. 2d 672 (2nd Cir. 1966)).  Section 1983 was particularly created to "[d]eter[ ] state actors from using [the] badge of their authority to deprive individuals of their federally guaranteed rights and provide relief to victims whenever such deterrence fails."  Id.; see also Wyatt v. Cole, 504 U.S. 158, 112 S.Ct. 1827 (1992); City of Newport v. Fact Concerts Inc., 453 U.S. 247, 101 S.Ct. 2748 (1981); Rueben Corp. v. Brauer, 655 N.E. 2d 1162 (1995).

Section 1983 authorizes actions for equitable relief and/or damages against "every person who under color of any [. . .] custom or usage, of any State or Territory [. . .] subjects or causes to be subjected any citizen of the United States or other person [. . .] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  Thus, as explained above in detail, in order to state a claim cognizable under Section 1983, Plaintiff must allege "that some person has deprived him of a [constitutional or a] federal [statutory] right." Gomez v. Toledo, 446 U.S. 635, 640 (1980).  To prevail in an action brought under 42 U.S.C. § 1983, plaintiff must satisfy two prongs.  First, he must prove that he was deprived of a right, immunity, or privilege secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Baker v. McCollan, 443 U.S. 137, 140 (1979); Voutour v. Vitale, 761 F.2d 812, 819 (1st

Cir.1985). Second, he must have been deprived of his right, immunity or privilege, by a person acting under color of state law. Id. Accordingly, two distinct elements are to be addressed. First, there must have been a violation of rights secured by the Constitution or laws of the United States and, defendants' conduct must have caused the deprivation of plaintiff's rights. Id.; see also Soto v Carrasquillo, 878 F.Supp. 324, 326-327 (D.P.R. 1995).

"The law is settled that a garden variety claim of malicious prosecution garbed in the regalia of § 1983 must fail. There is no substantive due process right[5] under the Fourteenth Amendment to be free from malicious prosecution and the availability of a plainly adequate remedy under the [state] law defeats the possibility of a procedural due process claim" in the instant case. See Perez Ruiz v. Crespo Guillen, 25 F.3d 40, 43 (1st Cir. 1994) (holding that the adequate state remedy for malicious prosecution is under 31 P.R. Laws Ann. § 5141 is fatal to a claimant's claim); see also Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) (citing Roche v. John Handcock, 81 F. 3d 249 (1st Cir. 1996) (internal citations omitted)); Ramos Bonilla, 336 F.Supp.2d at 166. Consequently, in order to transform a malicious prosecution claim into a claim cognizable pursuant to §1983, the plaintiff must demonstrate a deprivation of a constitutional right. See Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Particularly, in the specific case of malicious prosecution, the First Circuit Court of Appeals has established that, in order to determine whether

---

[5] Moreover, the Supreme Court has consistently held: "[w]e begin analysis of petitioner's claim by repeating our observation in Collins v. Harker Heights, 503 U.S. 115, 125, 117 L.Ed.2d 261, 112 S.Ct. 1061 (1992). 'As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.' The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. See e.g. Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 847-49, 120 L.Ed.2d 674, 112 S.Ct. 2791 (1992) (describing cases in which substantive due process rights have been recognized). Petitioner's claim to be free from prosecution except on the basis of probable cause is markedly different from those recognized in this group of cases." Albright, 510 U.S. at 271-72. See also Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001).

a federal protected right has been violated, the plaintiff has to establish that the criminal charges at issue must have imposed some depravation of liberty consistent with the concept of seizure. <u>Britton v. Maloney</u>, 196 F.3d 24, 28-29 (1st Cir. 1999) (*citations omitted*).

Section 1983 "is not in itself a source of substantive rights" but "a method for vindicating federal rights elsewhere conferred." <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994).  Hence, the plaintiff has to identify the constitutional right allegedly infringed. <u>Id.</u> (*citations omitted*).  **The Fourteenth Amendment, in its procedural due process aspect, as is clearly plaintiff Bird's claim, cannot serve as the vehicle for plaintiff's assertion of the infringement of his constitutional rights, pursuant to the alleged malicious prosecution he was subjected to, since the plaintiff has an adequate remedy for malicious prosecution pursuant to state law.  *See* 31 L.P.R.A. §5141; *see also* <u>Nieves v. McSweeney</u>, 241 F.3d at 53 ("[n]o procedural due process claim can flourish in this soil because [Puerto Rico] provides an adequate remedy for malicious prosecution.").  Furthermore, the malicious prosecution claim also fails the substantive due process aspect of the Fourteenth Amendment since the "'substantive due process may not furnish a constitutional peg on which to hang' a federal malicious prosecution tort." <u>Id.</u> (*quoting* <u>Albright v. Oliver</u>, 510 U.S. at 271 n. 4.)**  However, "[w]here a particular Amendment 'provides and explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. at 273 (*quoting* <u>Graham v. O'Connor</u> 490 U.S 386 at 395 (1989)).  Therefore, the Fourth Amendment could potentially constitute an adequate 'constitutional peg' where a plaintiff subjected to a malicious prosecution may 'hang' his §1983 claim.  *See* <u>Ramos Bonilla</u> 336 F.Supp.2d at 166-67; <u>Nieves v.</u>

McSweeney, 241 F.3d at 54; Meehan v. Town of Plymouth, 167 F.3d at 88 (*citing* Albright v. Oliver
510 U.S. at 371).

The First Circuit has established that "[f]or a public official to transgress the Fourth
Amendment through the initiation and pursuit of criminal charges, **the prosecution of said charges
must, at a bare minimum, have occasioned a *deprivation of liberty* consistent with the concept
of a seizure.**" Id. at 54 (*citing* Britton v. Maloney, 196 F.3d 24, at 28 (*citing* Singer v. Fulton County
Sheriff, 63 F.3d 110, 116 (2ⁿᵈ Cir. 1995)) (*emphasis added*).  In other words, **a seizure actionable
under the Fourth Amendment only occurs when a state official, under color of authority,
restrains the liberty of a citizen**. *See* Nieves v. McSweeney, 241 F.3d at 55.  For example, a legal
obligation to appear in court does not impose any restrictions on a person's liberty and is insufficient
to establish a seizure within the meaning of the Fourth Amendment.  Nieves v. McSweeney, 241
F.3d at 56; Britton v. Maloney, 196 F.3d at  29-30.

The malicious prosecution cause of action permits damages for a deprivation of liberty
pursuant to a legal process.[6]

The Court, thus, proceeds to address the seizure of plaintiff's computer as the basis of
plaintiff's malicious prosecution claim.  The seizure in the instant case, was **not** a warrantless
seizure.  In fact, a Court Order had been issued for said computer.  However, as the First Circuit
concluded in *Meehan* that  **a warrantless arrest** could not "bring a malicious prosecution claim
based upon his arrest because his arrest [did] not constitute the 'initiation of the proceedings' against
Meehan" nor did it constitute legal process, Meehan, 167 F.3d at 89-90.  The seizure of plaintiff's

---

[6]  In a malicious prosecution claim the plaintiff must establish that (1) the criminal action was initiated and
instigated by co-defendants;(2) the same culminated in favor of the plaintiff;(3) defendants acted with malice and
absent probable cause; (4) and plaintiff suffered damages. Rodriguez Esteras v. Solivan Diaz 266 F. Supp.2d 270,
279 (D.P.R. 2003).

computer in the instant case **cannot** constitute the initiation of the proceedings (furthermore, it must be noted, the computer is property of the government, and not of plaintiff). Accordingly, he is barred from bringing a malicious prosecution claim based on the seizure of his computer.  Hence, absent plaintiff's malicious prosecution claim, plaintiff fails to establish his seizure claim under the Fourth Amendment.  Plaintiff, therefore, lacks the 'constitutional peg' 'to hang' his §1983 claim – more so when criminal charges were **never** filed.  *See* <u>Nieves v. McSweeney</u>, 241 F.3d at 54 (*citing* <u>Meehan</u>, 167 F.3d at 89-90).

In sum,  the Court finds that plaintiff has failed to allege facts to sustain a Fourth Amendment violation, pursuant to his malicious prosecution claim, as such, plaintiff failed the very first prong of any claim pursuant to § 1983 which is to establish an infringement of a federal right, and summary judgment on this matter must be **GRANTED** in favor of defendants.

## IV.  SUPPLEMENTAL CLAIMS

Plaintiff also brought forth causes of action under state law requesting indemnification of damages suffered due to defamation and under Article 1805 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141.  Nevertheless, a Court in a non-diversity case, such as this, must have the presence of at least one substantial federal claim as to at least one defendant in the lawsuit in order to hear and determine pendent stat law claims.  *See* <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Aviles Martinez v. Jimenez Monroig</u>, 764 F.Supp. 240 (D.P.R. 1991).  As the Court must enter judgment against plaintiff Bird's federal claims, the Court no longer has the power to adjudicate his pendent state claims.  <u>Id.</u>  Therefore, the Court, in its discretion, declines to exercise its supplemental jurisdiction defamation and tort claims as to Bird's claims against Defendant, and must dismiss them without prejudice.  *See* <u>Rodríguez v. Doral</u>

Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  "As a general principle, the unfavorable disposition of a plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Id. (citations omitted).  Accordingly, plaintiff's claims under Puerto Rico Law are **DISMISSED WITHOUT PREJUDICE**.

## V.  CONCLUSION

Accordingly, and for the reasons aforementioned, the Court **GRANTS** defendants motion for summary judgment (Docket No. 66) and **DISMISSES WITH PREJUDICE** all plaintiff's federal claims.  Since the Court dismissed plaintiff's federal action, pursuant to 28 U.S.C. § 1367 (c) as interpreted in  González de Blasini v. Family Department, 377 F.3d 81, 89 (1st Cir. 2004); Claudio Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 105 (1st Cir. 2004); and Rodríguez v. Doral Mortgage, 57 F.3d 1168, 1177 (1st Cir, 1995) all claims pursuant to state law are hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of September of 2005

s/ Daniel R. Dominguez
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**